UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DANA SOBIERAJ**, and
**PAMELA SOBIERAJ**,

Debtors.

Case No. **06-60897-13**

# *MEMORANDUM of DECISION*

At Butte in said District this 5th day of June, 2007.

Pending in this Chapter 13 bankruptcy is Debtors' Objection to Proof of Claim No. 13 filed by HSBC Mortgage Services ("HSBC"). Hearing on this contested matter was held in Billings on April 24, 2007. Debtors were represented at the hearing by attorney James A. Patten of Billings, Montana, and Debtor Dana Sobieraj ("Dana") testified. HSBC was represented at the hearing by attorney Matthew Kolling of Dickinson, North Dakota. Debtors' Exhibits A, D, F through K, M and N, and HSBC's Exhibit 1 were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief, the Court granted Debtors through May 9, 2007, to file a brief in support of their Objection and granted HSBC ten days thereafter to file a reply brief. Also at the conclusion of the hearing, the Court directed Debtors' counsel to file a copy of Debtors' Deed of Trust and continued the hearing on confirmation of Debtors' Chapter 13 Plan.

Debtors' timely filed their "Brief in Support of Objection to Proof of Claim" on May 9,

1

2007, and HSBC timely filed its "Brief in Opposition to Debtor's [sic] Objection to Proof of Claim" on May 21, 2007.  HSBC's Brief is accompanied by a spreadsheet prepared by HSBC that purportedly reflects certain advances made by HSBC and payments made by Debtors.  The attachment to HSBC's Brief was not introduced at the hearing, and because the spreadsheet does not appear to reflect newly discovered evidence, the Court will not consider the attachment for purposes of this Memorandum.  After review of the record and applicable law, this matter is ready for decision.  For the reasons set forth below, by separate order, Debtors' objection shall be overruled.  This Memorandum contains the Court's findings of fact and conclusions of law.

HSBC filed Proof of Claim No. 13 on January 22, 2007, asserting a secured claim of $288,903.93, of which $52,192.16 is attributable to arrearages and other charges.  Debtors' Objection attacked HSBC's Proof of Claim on numerous grounds.  However, following the hearing, HSBC filed an Amended Proof of Claim on April 25, 2007, asserting a secured claim of $287,704.11, of which $50,992.34 is attributable to arrearages and other charges.  As set forth in Debtors' May 9, 2007, Brief, HSBC's Amended Proof of Claim settles all matters except for Debtors' contention that HSBC has not given Debtors proper credit for escrow payments made by Debtors to HSBC for payment of property taxes.

Debtors and HSBC are in agreement that property tax payments made by HSBC on behalf of Debtors total $26,031.87.  HSBC contends that Debtors still owe HSBC $24,534.02 for property tax advances while Debtors maintain that HSBC's property tax calculation is overstated by $12,041.13.

Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes

*prima facie* evidence of the validity and amount of the claim. Thus, if a procedurally proper claim is filed, an objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim. *In re Weber*, 16 Mont. B.R. 49, 56 (Bankr. D.Mont. 1997); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). However, once the objecting party succeeds in overcoming the *prima facie* effect given to the claim by Rule 3001(f), the burden shifts to the claimants to prove the validity of their claims by a preponderance of the evidence. *In re Allegheny Int'l, Inc*. 954 F.2d 167, 173-74 (3rd Cir. 1992).

In the instant case, the Court finds that Debtors have not overcome the *prima facie* effect given HSBC's claim by virtue of F.R.B.P. 3001(f). Debtors essentially seek to convince the Court of two things; one, that Debtors and HSBC were operating under an escrow agreement and two, that Debtors have contributed approximately $300.00 per month to the escrow account, resulting in total payments toward property taxes of $13,990.74.

Dana testified at the hearing that Debtors and HSBC entered into an oral agreement over the telephone to set up an escrow arrangement for the payment of property taxes on Debtors' property. According to Dana, the oral agreement was supposedly made sometime in 2001 and Debtors began making increased loan payments to HSBC in November of 2001. The Court finds it curious that Debtors allegedly began making escrow payments to HSBC in November of 2001, yet HSBC did not make a payment to the Yellowstone Country Treasurer for Debtors' property taxes until June 22, 2005. On that date, HSBC wrote two checks to the Yellowstone Country Treasurer totaling $21,128.91. HSBC made one additional payment of $4,902.96 to the Yellowstone County Treasurer on July 19, 2006.

Other than Dana's testimony, Debtors offered not a single shred of evidence to support their claim that an escrow account was established. Instead, Debtors offered a listing of the

3

payments they made between January of 2001 and April of 2006, and offered a copy of an account summary and payment coupon dated September 14, 2006. The account summary shows that as of September 14, 2006, Debtors owed $27,948.94 consisting of a current payment amount of $3,097.63, past due payments of $17,320.71, unpaid late charges of $7,191.10, and other fees of $339.50. Nothing is included in the aforementioned amount for "Escrow/Advance". However, that same account summary shows an "Escrow/Account Balance" of a negative $25,034.02, which balance was presumably created after HSBC made the three property tax payments to the Yellowstone County Treasurer in June of 2005 and July of 2006.

The absence of any persuasive evidence regarding the establishment of an escrow agreement is not, however, the determining factor in this case. Rather, the documentation offered into evidence by Debtors at the hearing convinces this Court that the amount paid by Debtors to HSBC over and above Debtors' monthly principal and interest payments of $2,102.13, covered missed payments, and monthly late charges and other fees of approximately $126.12 per month.

Debtors' Exhibit D is a copy of a payment letter to borrower showing that Debtors' monthly principal and interest payment was $2,102.13. The parties agree that the sum of $2,102.13 does not include any payment for insurance or property taxes. Considering only Debtors' monthly payment for principal and interest, and assuming Debtors' payments were timely made, Debtors should, at a bare minimum, have paid HSBC $25,225.56 for each full calendar year. However, Debtors' Exhibits F, G, H, I, J and K show that Debtors made ten payments totaling $21,435.00 in 2001; ten payments totaling $24,007.14 in 2002;[1] eleven

---

[1] Debtors' Exhibit G reflects 11 payments, but Exhibit G reflects a payment of $2,408.57 made on January 6, 2003. The Court has included the aforementioned payment in the year 2003.

4

payments totaling $26,427.71 in 2003; twelve payments totaling $28,787.00 in 2004; ten payments totaling $23,980.00 in 2005; and two payments totaling $4,796.00 in 2006.

As the foregoing shows, beginning in January of 2001 through February of 2006, Debtors should have made 62 payments of $2,102.13 each, for a total of $130,332.06. However, Debtors' Exhibits F, G, H, I, J and K show that Debtors' total payments for that period totaled only $129,432.85, a shortage of $899.21. The figure of $130,332.06 does not include any amount for late charges, and Debtors' evidence shows that Debtors's monthly mortgage payments were generally paid late.

According to a Note dated November 19, 1996, Debtors' mortgage payments were due on the first of each month. *See* Exhibit D, ¶ 3(A). In addition, the Note provides at paragraph 6 that Debtors will pay a 5 percent late charge if HSBC "has not *received* the full amount of any monthly payment by the end of 10 calendar days after the date it is due".[2] Debtors' Exhibit F shows that Debtors' January 2001 payment, which was due on January 1, 2001, and was delinquent after January 10, 2001, was not written until January 16, 2001. That payment was thus delinquent and therefore subject to the 5 percent late payment penalty. Debtors' Exhibit F also shows that Debtors' February 2001 through July 2001 payments were tardily paid. For instance, although the check that Debtors wrote for their February 2001 payment is dated February 8, 2001, such check did not clear Debtors' bank until March 7, 2001. Such payment was clearly not "received" by HSBC within the 10-day grace period, making that payment subject to a late payment penalty. Debtors also failed to make their August 2001 and December

---

[2] According to the attachments to HSBC's amended Proof of Claim, the monthly late charge is $126.12.

5

2001 payments and the payments for September, October and November of 2001 do not appear to have been received by HSBC prior to expiration of the 10-day grace period. Thus, for each of the 12 months in 2001, Debtors either did not make their payments, or they failed to make the payments in a timely fashion.

Debtors' practice of missing payments and/or making their payments tardily continued through 2002 and 2003. In 2004 Debtors made 12 monthly mortgage payments, but it appears that most, if not all, of the payments were received by HSBC after the 10-day grace period had expired. Debtors may attempt to argue that they sent their payments to HSBC in plenty of time for HSBC to receive the payments within the 10-day grace period, but such argument would fall flat. For example, in February of 2005, Debtors sent check number 1527 to HSBC. Although check number 1527 bears a date of February 9, 2005, such check was not deposited by HSBC until March 8, 2005. Tellingly, Debtors' Exhibit J shows that check number 1525 was dated February 27, 2005, while check numbers 1526 and 1528 were dated March 2, 2005. Thus, while check number 1527 may bear the date of February 9, 2005, it appears that such check was actually written on or about March 2, 2005, and not February 9, 2005. The same holds true for check number 1705, which bears a date of March 9, 2005. Debtors' Exhibit J shows that check number 1704 was written, or at least dated, April 7, 2005, while check number 1707 was dated April 10, 2005.[3] Thus, the Court finds it fair to assume that check number 1705 was sent to HSBC sometime around April 7, 2005, even though the check was dated March 9, 2005, by Debtors.

The attachments to HSBC's amended Proof of Claim show that the total prepetition

---

[3] Check number 1706 is not reflected in Exhibit J.

6

arrearage owed by Debtors to HSBC is $50,992.34. That amount consists of the 8 payments that Debtors did not make in 2006 totaling $16,817.04 (March through October) and includes 7 late charge fees of $126.12 each, or $882.84, for such payments. The arrearage amount also includes NSF Fees of $110.00, recoverable corporate advances of $739.50, foreclosure fees and costs of $1,998.78, a fax fee of $45.00, accrued late charges of $5,865.16 and the property tax advance of $24,534.02.

As previously discussed, Debtors' Exhibits F, G, H, I, J and K show that Debtors made 55 payments for the period of time from January of 2001 through February of 2006, totaling $129,432.85. However, during that period of 5 years and two months, Debtors should have made 62 principal and interest payments totaling $130,332.06. The difference between what Debtors should have paid and what Debtors actually paid is $899.21. Dana testified at the hearing that at least one delinquent payment was to be added to the end of Debtors' loan with HSBC. While that may be true, Debtors wholly fail to consider that, according to this Court's calculation, at least 75 percent of Debtors' monthly mortgage payments made between January of 2001 and February of 2006, were made outside the 10-day grace period. Multiplying 62 months in the applicable period by 75 percent results in 46.5. Multiplying 46.5 times the monthly late charge fee of $126.12 results in a figure of $5,864.58, which amount is remarkably similar to the accrued late charge of $5,865.16 set forth in HSBC's arrearage calculation.

In sum, Debtors offer not one scintilla of evidence to support their assertion that they paid $13,990.74 into an escrow account during the period of time from November of 2001 through April of 2006. Consequently, the Court finds that Debtors' have not overcome the *prima facie* validity afforded HSBC's claim under F.R.B.P. 3001(f). Accordingly, the Court will enter a

7

separate order providing as follows:

IT IS ORDERED that Debtors' Objection to Proof of Claim No. 13 filed by HSBC Mortgage Services is OVERRULED; and amended Proof of Claim No. 13 is allowed as filed.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana